IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 4, 2019 Session

## STATE OF TENNESSEE v. RICHARD GLEASON

**Appeal from the Criminal Court for Shelby County**
**No. 15-01130      Chris Craft, Judge**

_____

### No. W2018-01389-CCA-R3-CD
_____


Defendant, Richard Gleason, was indicted by the Shelby County Grand Jury for rape of a child and aggravated sexual battery. Following a jury trial, Defendant was convicted of two counts of aggravated sexual battery. Following a sentencing hearing, the trial court sentenced Defendant to concurrent sentences of 12 years' imprisonment. Defendant raises ten issues in this appeal as of right. Defendant asserts that: 1) the trial court erred by not requiring the State to provide him a bill of particulars; 2) the trial court erred by not excluding the narrative portion of a medical report admitted as an exhibit; 3) the trial court erred by allowing the victim's mother to testify about a prior consistent statement of the victim; 4) the trial court erred by not permitting evidence of domestic violence between the victim's mother and the victim's mother's boyfriend; 5) the State made improper statements during closing argument; 6) Defendant's due process rights were violated by a pre-indictment delay; 7) the State's election of offenses was overly vague and insufficient; 8) the trial court erred by considering non-statutory factors in sentencing Defendant; 9) the evidence at trial was insufficient to support Defendant's convictions; and 10) Defendant is entitled to relief for cumulative error. Having reviewed the entire record, we conclude that the trial court erred by admitting into evidence statements made by the victim to her mother. The two times hearsay evidence was admitted were through a medical report and also during the mother's testimony during trial. The statements should have been excluded as hearsay, and it was error for the trial court to allow the statements. We conclude, however, that both errors were harmless and did not affect the outcome of the trial. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and TIMOTHY L. EASTER, J., joined.

Josie S. Holland, Memphis, Tennessee, for the appellant, Richard Gleason.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Lessie Rainey, Abby Wallace, and Cavett Ostner, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Trial*

This case involves two instances of sexual abuse by Defendant against his daughter, to whom this court will refer to as "the victim." The victim's mother testified that in 2013, the victim lived with her and spent time with Defendant, Defendant's mother, and Defendant's grandmother at Defendant's grandmother's house most weekends. The victim was six years old at the time. In October, 2013, the victim's mother was watching a movie with the victim and other family members when the victim told her mother that she had something to tell her. The victim whispered in her mother's ear, and her mother took her to another room. She asked the victim a litany of questions, including whether the victim was lying. The victim's mother took her outside and asked her to demonstrate on her arm what Defendant had done to her. The victim's mother testified that the victim "grabbed [her] arm" and started "licking it and moving her tongue, you know, up and down and all this stuff like that." The victim's mother told her again, "don't lie to me because I don't want to get nobody [sic] in trouble." The victim's mother asked the victim if Defendant had "put his private part . . . in her." The victim told her mother "no" and then told her "it hurted [sic]." The following day, the victim's mother took the victim to see a doctor. The doctor's office contacted the Department of Children's Services.

In January, 2014, the victim was interviewed by Patricia Lewis at the Memphis Child Advocacy Center. During the interview, the victim stated that "[her] daddy did something that he [was not] supposed to do." She told Ms. Lewis that Defendant "licked [her] private area" with his tongue, and "he put his private area in [hers]." Using diagrams, the victim identified the male and female genital areas. The victim stated that both incidents happened at "Gigi's house." The victim stated that it happened "two times." She stated that the first incident happened in a dark room. She stated that Defendant pulled down her pajama bottoms and panties, and he closed the door to the room. She described the clothes that Defendant was wearing. She stated that she was in a brown rocking chair, and Defendant was on his knees. She stated that she was scared to tell Defendant to stop because it was dark. The victim stated that the second incident happened in the same room. Defendant licked her private area again and put his tongue

- 2 -

in her "middle part." She stated that he pulled down his pants and put his "private area" in her "private area." The victim used dolls to demonstrate what Defendant did to her.

On cross-examination, Ms. Lewis acknowledged that the victim's account of separate incidents "was a little confusing." She testified, "she could have been talking about one incident and it happened the same day two times versus two locations and different times."

The victim testified at trial that she and Defendant slept in the room with the brown chair. She testified that Defendant used the flashlight on "Gigi's flip phone" to see her "private area." She recalled what she was wearing. She testified that Defendant "pulled [her] shorts down and then he pulled [her] underwear, like to the side and then he got the flashlight and then he licked [her] private part." The victim testified it happened twice during the same weekend. She testified, "I would say about maybe two times because I think that was probably I think maybe the end of the weekend then I went back to my mama['s] house and that was the night when I told her." She testified that it happened "[m]ore than once in separate nights." She testified about the second incident, "I didn't know what time it was, but he got up in the middle of the night and then I got up and then I went to the restroom and I came back. Then I don't know what happened after that."

The victim recalled telling her mother about the incidents. She testified that she was watching a movie with her mother and stepfather. When she told her mother what Defendant had done to her, her mother took her into the bathroom. Her mother then took her outside to the car to talk because "she didn't want nobody else to hear it."

Kristine Gable, the nursing coordinator for the Rape Crisis Center, examined the victim on March 21, 2014. She testified that the victim reported to her that Defendant "pulled [her] pants down and put his mouth on [her] private part. He put his wrong spot in [her] vagina. It hurted [sic]." Ms. Gable testified that she found no oral, genital, or anal injuries to the victim. She testified that "most times with rape or sexual assault there are no injuries at all." Ms. Gable testified that a rape kit was not collected in this case because too much time had passed between the reported incidents and the examination. She testified that the victim tested negative for sexually transmitted diseases.

Dr. Joseph Dewayne testified for the defense. Dr. Dewayne was qualified as an expert in obstetrics and gynecology. He opined that the findings in the medical report did not indicate whether or not the victim was sexually abused.

Defendant did not testify or present any additional proof.

- 3 -

### Sentencing hearing

At the sentencing hearing, the presentence report was admitted as an exhibit. Defendant's mother testified that Defendant's father passed away when Defendant was young. She testified that Defendant was in foster care as a child because she used drugs. Before his incarceration in 2015, Defendant "did what he could" to financially support his children. She also testified that Defendant did not use drugs and that he completed his G.E.D. while he was incarcerated.

At the conclusion of the hearing, based on the presentence report, the trial court found that Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. The trial court also found that Defendant abused a position of private trust, and the court gave that factor "great weight." The trial court considered Defendant's circumstances, that he had been in foster care and his mother had been incarcerated for drug offenses, finding those circumstances to be "somewhat mitigating." However, the trial court stated that Defendant's drug use and poor employment history indicated that Defendant had "done absolutely nothing with his life." The trial court concluded, "[s]o, I can't really give weight" to that mitigating factor. The trial court imposed concurrent sentences of 12 years for each conviction.

### Analysis

#### Bill of particulars

Defendant contends that the trial court erred by not ordering the State to provide a bill of particulars. The State responds that Defendant did not properly preserve this issue and that Defendant has not established that a bill of particulars was required.

Tennessee Rule of Criminal Procedure 7(c) provides, "On defendant's motion, the court may direct the district attorney general to file a bill of particulars so as to adequately identify the offense charged." A bill of particulars serves three purposes. First, the bill of particulars provides a "'defendant with information about the details of the charge against him if this is necessary to the preparation of his defense.'" *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991) (quoting *State v. Hicks*, 666 S.W.2d 54, 56 (Tenn. 1984)). Second, it assures that a defendant has an opportunity to "'avoid prejudicial surprise at trial.'" *Id.* Finally, it enables the defendant to preserve a plea against double jeopardy. *Id.*; *see also State v. Speck*, 944 S.W.2d 598, 600 (Tenn. 1997). A bill of particulars is not a discovery device and is limited to information a defendant needs to prepare a defense to the charges. Tenn. R. Crim. P. 7(c), Advisory Comm'n Comments.

The trial court should make every effort to ensure that the State supplies all critical information in its bill of particulars, but lack of specificity will not result in reversible error unless a defendant can prove prejudice. *Speck*, 944 S.W.2d at 601; *Byrd*, 820 S.W.2d at 741. Such prejudice cannot be found until after all proof has been presented. *State v. Sherman*, 266 S.W.3d 395, 409 (Tenn. 2008).

The indictment in this case alleged that both counts occurred "between June 1, 2013 and November 1, 2013[.]" Defendant filed two pretrial motions for a bill of particulars, seeking the specific time and place of the offenses and the acts alleged to have been committed. At a pretrial hearing, the State suggested that defense counsel view the victim's forensic interview and "then see if anything further is required." The trial court took the matter under advisement "until we see whatever proof develops," noting that "it may be that I will ask the State to make a written response with more clarified times" or "[i]t may be that under the circumstances I cannot." The trial court's written order reflected that the motion, "by consent, will not be heard until the forensic interview of the alleged victim has been obtained and turned over to the defense for their consideration."

At a subsequent pretrial hearing, the trial court ruled that the victim's forensic interview was admissible. The bill of particulars was not mentioned again in the record until Defendant's motion for new trial. In the motion, defense counsel stated that it was her "recollection that the issue was again raised after obtaining the forensic interview, and the [trial] court declined to compel the State to furnish a bill of particulars." Counsel acknowledged, however, that two years had passed since the pretrial hearing and that the record would reflect "whether counsel adequately preserved this issue."

At the hearing on Defendant's motion for new trial, defense counsel argued,

> [t]he problem with the indictment, Your Honor, is that it alleged a span of months in which this incident was alleged to have occurred.
>
> And, at trial it was a very specific weekend that the State said that the events occurred. And, it was not until trial that I knew that the State was going to allege that particular weekend.
>
> And, we would allege that there was unfair surprise, in some ways, I wasn't able to produce an alibi witness who could have said whether or not [Defendant] was there. We just did not anticipate that that was going to be in the State's proof.

- 5 -

In denying Defendant's motion for new trial, the trial court found that no proof was presented that "the defense ha[d] been hampered by a lack of specificity," and the court concluded that a bill of particulars was not needed.

We agree with the State that Defendant has waived consideration of this issue. The record shows that the issue was not raised again in the trial court, after Defendant's motion was taken under advisement, until Defendant's motion for new trial was filed. In *State v. Lonnie Turner*, No. M1999-01127-CCA-R3-CD, 2001 WL 605153 (Tenn. Crim. App. June 5, 2001), *perm. app. denied* (Tenn. Dec. 10, 2001), a panel of this court declined to review the issue where the defendant failed to obtain a ruling, either written or oral, on his motion for bill of particulars. *Id*. at *20 (citing Tenn. R. App. P. 36(a)). The panel also noted that "much of the requested information was provided to defense counsel, in one form or another, although not always in the detail requested" and that the defendant was not prejudiced in the preparation of his defense. *Id*. (citing *State v. Stephenson*, 878 S.W.2d 530, 539 (Tenn. 1994).

Furthermore, the record reflects that discovery materials provided to Defendant established that the offenses occurred over a weekend in October, 2013. The arrest report states that the "Date of Occurrence" was October 18, 2013. Defendant's assertion that the arrest report alleged that the incident occurred on November 1, 2013, is incorrect. The arrest report states that the "Forcible Sodomy report was *filed*" on that date. (Emphasis added). In his motion to dismiss the indictment, Defendant acknowledged that the arrest report alleged the offenses occurred on October 18, 2013. In the same motion, Defendant admitted that the victim spent the weekend with him October 18 through October 20, 2013. The medical records of the victim also indicate that the offenses occurred in October, 2013. The nursing evaluation from the Rape Crisis Center established that the oral contact happened in October, 2013, and the notes from the physical examination conducted on October 22, 2013, state that the abuse happened "two nights ago." Defendant was provided these records prior to trial.

We cannot conclude that Defendant was prejudiced by the State's failure to furnish a bill of particulars. Defendant also asserts that he is not adequately protected from double jeopardy because the arrest report stated that the incidents occurred on November 1, 2013. However, as we already discussed, the arrest report states that an offense occurred on October 18, 2013. Moreover, regardless of the dates in the arrest report, Defendant is protected against double jeopardy for all the offenses "charged during the entire period of time covered in the indictment." *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). Defendant is not entitled to relief on this issue.

*Admission of hearsay evidence*

Defendant contends that the trial court erred by admitting the narrative portion of a medical report by Christ Community Health, which states that the victim told her mother that "dad had put his mouth in her private area," and that Defendant "put his penis in her private area," which "hurt" the victim. The State concedes on appeal that the statements were hearsay and that the trial court should have excluded them, but the State asserts that the error was harmless.

Defense counsel objected at trial to the introduction of the medical report, arguing that the victim's mother's statements to the medical provider were "hearsay within hearsay" and should have been redacted. The State argued that the narrative portion was for the purpose of diagnosis and treatment, and it was part of a business record. The trial court agreed with the State, noting that the "history from a patient to a doctor is something the doctor needs to know because part of the doctor's treatment would be to remove the perpetrator." The trial court also noted that the victim's mother "was available for cross-examination and said exactly the same thing. So all this is doing is repeating what the mother told the doctor would be basically a prior consistent statement." The trial court ruled that the unredacted medical record was admissible and that it was not "unfairly prejudicial to the defense . . . because we've already heard this testimony before, from both . . . the alleged victim and also from the mom."

On appeal, the State concedes that the statements the victim made to her mother were hearsay and should have been excluded by the trial court. Rule 803(4) of the Tennessee Rules of Evidence allows the admission of otherwise inadmissible hearsay by permitting the admission of statements made for the purposes of medical diagnosis and treatment. *See* Tenn. R. Evid. 803(4). In *State v. Rucker*, 847 S.W.2d 512 (Tenn. Crim. App. 1992), *overruled on other grounds by State v. McLeod*, 937 S.W.2d 867, 870 (Tenn. 1996), this court addressed whether statements given by third parties to treating medical personnel, as opposed to statements given by a minor patient to medical personnel, fell within the exception to the hearsay rule for medical treatment and diagnosis. In *Rucker*, the victim's mother took the victim to the hospital after discovering her estranged husband in the hallway of her home with the victim. 847 S.W.2d at 514. When they arrived at the hospital, the victim's mother told the nurse that she found her husband and daughter in the hall. She also told the nurse that the victim replied "yes" when the victim's mother asked her if the defendant had been "mess[ing]" with her. *Id*. The court held that the mother's description of finding the defendant and the victim in the hallway could come in under the medical diagnosis and treatment exception to the hearsay rule because it constituted medical history. *Id*. at 516-17. However, with regard to the victim's affirmance that the defendant had "messed" with her, the court concluded that it would only be "admissible if the statement falls within the purview of another exception to the hearsay rule." *Id*. at 517. This court ultimately held the victim's statement to the mother as admissible as an excited utterance. *Id*. Thus, it appears from *Rucker* that

statements by a third party to a medical provider must be admissible under a hearsay exception other than the exception allowed for statements made for medical diagnosis and treatment.

In *State v. Antwan Deemeek Hudson*, No. E2010-02005-CCA-R3-CD, 2012 WL 344740 (Tenn. Crim. App. Feb. 2, 2012), *perm. app. denied* (Tenn. May 16, 2012), a case cited in both parties' briefs, the victim and her parents were alone in a doctor's examination room when the victim said she had had sexual intercourse with her brother. When the doctor returned, the victim's parents relayed the information to the doctor. Applying the holding in *Rucker*, a panel of this court concluded that it was error for the trial court to admit the statement under Rule 803(4) and that the victim's statement to her parents did not fall under another hearsay exception. The panel concluded, however, that the error was harmless because other evidence was presented at trial to prove that the defendant and the victim had sexual intercourse. *Id.*

Here, the State contends that the trial court's admission of the statements was harmless because the same information was presented through other evidence. We agree with the State. Another medical report, the forensic nursing evaluation from the Rape Crisis Center, included a statement by the victim to the nurse: "Alone with nurse, [the victim] states, 'My daddy, he pulled my pants down and put his mouth on my private part. He put his wrong spot in my vagina; it hurted.'" The State emphasizes that Defendant offered the Rape Crisis Center report as an exhibit at trial; however, defense counsel requested that the section containing those statements be redacted. Nevertheless, the jury also viewed the victim's forensic interview, in which the victim stated that Defendant put his "private area" inside her "private area." The State acknowledges that the victim equivocated at trial, testifying that she could not remember what Defendant did to her during the second incident, but the State notes that the jury acquitted him of rape of a child in that count and instead convicted him of aggravated sexual battery.

Defendant bears the burden of establishing that the "admission of this evidence more probably than not affected the verdict or resulted in prejudice to the judicial process." *State v. Rodriguez*, 254 S.W.3d 361, 372 (Tenn. 2008). We conclude that the erroneous admission of the victim's mother's statements to the medical provider was harmless. Defendant is not entitled to relief on this issue.

*Admission of victim's prior consistent statement*

Defendant contends that the trial court erred by allowing the victim's mother to testify as to the victim's description of Defendant's conduct. The trial court permitted this testimony before the victim testified so that the victim's mother could be in the courtroom during the victim's testimony. The State asserts, however, that Defendant has

failed to establish that the error affected the judgment or prejudiced the outcome. We agree with the State.

The State acknowledges that this was error by the trial court. A prior consistent statement may only be admitted after the victim testifies. *State v. Herron*, 461 S.W.3d 890, 904-905 (Tenn. 2015) (holding that it was error to admit a victim's prior consistent statement during direct examination before her credibility had been attacked); *State v. Kendricks*, 891 S.W.2d 597, 603 (Tenn. 1994) (recognizing that a prior consistent statement is only admissible as rehabilitative evidence after a witness's credibility has been attacked). Thus, the trial court erred by allowing the victim's mother to testify as to the victim's statements before the victim testified and before the victim's credibility had been attacked.

The State asserts that the error was harmless. "[T]his Court has recognized three categories of error – structural constitutional error, non-structural constitutional error, and non-constitutional error." *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008). Automatic reversal is a remedy reserved for structural constitutional errors, such as "the complete denial of the right to counsel, racial discrimination in the selection of a grand jury, denial of the right of self-representation at trial, and denial of the right to a trial by jury." *Id*. (citing *Momon v. State*, 18 S.W.3d 152, 165-66 (Tenn. 1999)). Non-structural constitutional errors are subject to harmless error analysis and require reversal unless the State demonstrates beyond a reasonable doubt that the error did not contribute to the verdict obtained. *Id*. The third category of error is non-constitutional errors. *Id*. at 371-72. For such non-constitutional errors "Tennessee law places the burden on the defendant who is seeking to invalidate his or her conviction to demonstrate that the error 'more probably than not affected the judgment or would result in prejudice to the judicial process.'" *Id*. at 372 (quoting Tenn. R. App. P. 36(b)).

The trial court's error in admitting the victim's prior consistent statement falls into the third category of non-constitutional error. *Herron*, 461 S.W.3d at 909. We conclude that Defendant has not established that the error affected the judgment or prejudiced the judicial process. As discussed earlier in this opinion, the substance of the victim's statements was established by other properly admitted evidence. The forensic nursing evaluation contained similar statements made by the victim directly to the nurse: "Alone with nurse, [the victim] states, 'My daddy, he pulled my pants down and put his mouth on my private part.' 'He put his wrong spot in my vagina; it hurted.'" The report also stated that the victim reported to her mother that Defendant "put his mouth on her private area." The victim also discussed her disclosure of the abuse to her mother during the forensic interview, telling the interviewer that she told her mother that Defendant "put his middle part in [her] middle part." We conclude that the error was harmless.

*Third-party defense evidence*

Defendant contends that the trial court erred by excluding evidence of two prior domestic violence incidents between the victim's mother and her boyfriend, Kenneth Wilks. The State argues that the trial court properly excluded the evidence.

This court reviews the admission or exclusion of evidence at trial for an abuse of discretion. *State v. Hester*, 324 S.W.3d 1, 59 (Tenn. 2010). The trial court abuses its discretion when it applies "an incorrect legal standard or reaches a conclusion that is illogical or unreasonable and causes an injustice to the party complaining." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (internal quotation marks omitted). Similarly, a trial court abuses its discretion in limiting the scope of cross-examination of witnesses if the court "unreasonably restrict[s] a defendant's right to cross-examine a witness against him." *State v. Echols*, 382 S.W.3d 266, 285 (Tenn. 2012).

Defendant asserts that he "was robbed of his third-party defense." Rules 401 and 403 of the Tennessee Rules of Evidence govern the admissibility of proof implicating another person in the crime. *See State v. Bell*, 512 S.W.3d 167, 190 (Tenn. 2015) (citing *State v. Powers*, 101 S.W.3d 382, 395 (Tenn. 2003); *see also State v. Rogers*, 188 S.W.3d 593, 612-13 (Tenn. 2006). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

Evidence that a third party possessed motive and opportunity to commit the offense is relevant in a criminal case. *Bell*, 512 S.W.3d at 190 (citing *Powers*, 101 S.W.3d at 395). However, the evidence Defendant sought to introduce does not have any relevance to Mr. Wilks' motive or opportunity. The domestic assaults occurred after the sexual abuse occurred. One of the domestic violence incidents occurred on May 11, 2014, and the other occurred on March 29, 2017. Neither of the incidents involved the victim.

Defendant places great significance on the victim's reference to both Defendant and Mr. Wilks as "daddy" during the forensic interview. In a jury-out hearing to determine the admissibility of the evidence, defense counsel remarked to the trial court, "[i]f [the victim] had not mentioned that she called Kenneth Wilks daddy in the forensic interview, I would agree that this information would not be relevant. But she brings him up in the forensic interview and she calls both of these people daddy." However, the victim made clear during the forensic interview that Defendant is the person who abused her. She identified Defendant by name as her "real dad" and stated that he had done "something that he don't [sic] supposed to do." She acknowledged that Mr. Wilks was also her "daddy" and stated that he was not the person who abused her. During cross-

examination, she testified that she did not call Mr. Wilks "daddy." Further, defense counsel addressed Mr. Wilks' opportunity to commit the offenses during cross-examination of the victim's mother, establishing that Mr. Wilks sometimes stayed the night at her home and would occasionally watch the victim alone.

Defendant also argues that the prior allegations of domestic assault were relevant to impeach the victim and her mother. Defendant asserts that "[t]olerating violent activity in the home would have made [the victim's mother] a less credible witness, especially since she testified that she does not let her children around dangerous people." "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility[.]" Tenn. R. Evid. 611(b). A party also "may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." Tenn. R. Evid. 616. Indeed, "[t]he right to explore or examine witnesses for bias is a fundamental right." *State v. Sayles*, 49 S.W.3d 275, 279 (Tenn. 2001). However, Defendant did not seek to cross-examine the victim's mother about her testimony about "dangerous people." Instead, Defendant sought to call the officers who arrested Mr. Wilks. The trial court ruled that the officers' testimony would be hearsay.

Defendant argues that evidence of the alleged domestic assaults would have "provide[d] the jury with a reason for why [the victim] would not have been honest about the identity of her abuser." We disagree. The evidence Defendant sought to introduce does not establish any bias in favor of or prejudice against a party or witness. Mr. Wilks did not testify, nor was there any suggestion that he had personal knowledge of the offenses, and as previously discussed, Defendant did not establish any connection between the domestic violence incidents and the victim or Defendant, or that the victim was even aware of the incidents. Defendant has not established that the trial court abused its discretion by excluding the evidence.

Finally, Defendant asserts for the first time on appeal that the evidence should have been admitted "under reverse 404(b)." "It is well-settled that an appellant is bound by the evidentiary theory set forth at trial, and may not change theories on appeal." *State v. Alder*, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001). Thus, this issue is waived.

*Improper closing argument*

Defendant contends that the prosecutor made improper comments during closing argument. The State responds that Defendant has waived the issue by failing to make a contemporaneous objection. Defendant requests that this court review the issue under a plain error analysis.

Closing arguments are valuable tools for both the prosecution and the defense, and the Tennessee Supreme Court has historically allowed wide latitude to counsel in arguing their cases during closing arguments. *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998). "Trial judges in turn are accorded wide discretion in their control of those arguments." *State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. 2003) (quoting *State v. Zirkle*, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995)). A trial judge's discretion will not be interfered with in terms of closing arguments without evidence of abuse. *Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975). Although not exhaustive, Tennessee courts have recognized five general areas of potential improper prosecutorial argument: (1) intentionally misstating the evidence or misleading the jury as to the inferences it may draw; (2) expressing personal beliefs or opinions as to the truth or falsity of any testimony or the guilt of the defendant; (3) inflaming or attempting to inflame the passions or prejudices of the jury; (4) injecting issues broader than the guilt or innocence of the accused; and (5) arguing or referring to facts outside the record unless the facts are matters of common knowledge. *Goltz*, 111 S.W.3d at 5. There is a reversible error only when, "conduct was so improper or the argument so inflammatory that it affected the verdict to the Appellant's detriment." *Id.* (quoting *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965)).

Defendant complains about two instances of improper comments by the prosecutor during closing argument. First, Defendant asserts that the prosecutor improperly referred to adult abusive relationships when discussing the victim's continued contact with her father:

> Also, ladies and gentlemen, I ask you to use that common sense that we talked about in voir dire. This is a situation, a tragic situation in which a six-year-old girl is sexually abused by her biological father, her actual father. How in the world is she supposed to understand and process the emotions that go along with that? She's six. She wants to please her dad. Of course she loves her dad. *Grown people, adults struggle with these kinds of abusive relationships. We've all seen it.*

(Emphasis added).

Additionally, Defendant asserts that it was improper for the prosecutor to state that the victim's forensic interview was substantive evidence like witness testimony is substantive evidence. The prosecutor stated: "And keep in mind that that forensic interview, that videotaped conversation is proof just exactly the same way [the victim's] courtroom testimony was proof and every other witness you heard from was proof."

Defendant did not object to either of these comments during the State's closing arguments.  In order to properly bring an issue with closing argument forward on appeal, the complaining party must have objected to the argument contemporaneously.  *State v. Robinson*, 146 S.W.3d 469, 518 (Tenn. 2004); *see State v. Green*, 947 S.W.3d 186, 188 (Tenn. Crim. App. 1997).  Defendant also failed to include the first challenged comment in his motion for new trial.  According to the Tennessee Supreme Court's ruling in *Robinson*, this claim is thereby waived.  146 S.W.3d at 518; *see also State v. Hill*, 333 S.W.3d 106, 128-29 (Tenn. Crim. App. 2010) (improper closing argument claims are waived when not included in the motion for new trial); Tenn. R. App. P. 36(a).

Although Defendant included the second comment in his motion for new trial, where a defendant fails to make a contemporaneous objection, the improper argument must be "exceptionally flagrant" and constitute plain error.  *State v. Banks*, 271 S.W.3d 90, 132 (Tenn. 2008).  To establish plain error, Defendant has the burden of establishing the following factors:

> (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law has been breached; (c) a substantial right of the accused has been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016).  All five factors must be established by the record before this court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established.  *State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014).  Even if all five factors are present, "the plain error must be of such a great magnitude that it probably changed the outcome of the trial."  *Id.* (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)).  In other words, to obtain relief, Defendant would have to show that the prosecutor's allegedly improper argument was "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error."  *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006).

We conclude that neither of the challenged arguments were "exceptionally egregious" as set forth in *Page*.  *Id*.  Regarding the second comment, Defendant acknowledges that "[t]he forensic interview may be admitted as substantive evidence," pursuant to Tennessee Code Annotated section 24-7-123, but Defendant argues, "that does not make it as good as sworn testimony."  Defendant bears the burden of persuading this court that the trial court committed plain error and that the error probably changed

the outcome of the trial. *See Martin*, 505 S.W.3d at 505. Defendant has failed to do so. Defendant is not entitled to relief on this issue.

*Pre-indictment delay*

Defendant contends that his due process rights were violated due to a pre-indictment delay of 17 months. The State responds that Defendant has failed to establish a due process violation.

The Fifth and Fourteenth Amendments to the United States Constitution and article I, section 8 of the Tennessee Constitution provide a criminal defendant with the right to due process. A delay between the commission of an offense and the initiation of formal proceedings may violate the right to due process. *State v. Gray*, 917 S.W.2d 668, 671 (Tenn. 1996).

> Before an accused is entitled to relief based upon the delay between the offense and the initiation of adversarial proceedings, the accused must prove that (a) there was a delay, (b) the accused sustained actual prejudice as a direct and proximate result of the delay, and (c) the State caused the delay in order to gain tactical advantage over or to harass the accused.

*State v. Dykes*, 803 S.W.2d 250, 256 (Tenn. Crim. App. 1990); *see State v. Utley*, 956 S.W.2d 489, 495 (Tenn. 1997); *United States v. Marion*, 404 U.S. 307 (1971). Prejudice to a defendant is the most critical factor. *State v. Gilley*, 297 S.W.3d 739, 755 (Tenn. Crim. App. 2008).

Here, the delay in this case was 17 months. The offenses were alleged to have occurred in October, 2013, and Defendant was indicted in March, 2015. A delay of 18 months or less is certainly not presumptively prejudicial. *See State v. Baker*, 614 S.W.2d 352, 354 (Tenn. 1981). Moreover, Defendant has not shown that he suffered any actual prejudice as a result of the delay or that the State caused the delay to obtain a tactical advantage over Defendant. Defendant argues that two potential witnesses, Defendant's grandparents who lived in the home where the offenses occurred, died "before this matter could be brought to trial or before any pre-trial hearings took place." However, Defendant's grandparents died after Defendant was indicted. *See State v. Billy Hill*, No. E2015-00811-CCA-R3-CD, 2017 WL 532481, at *15 (Tenn. Crim. App. Feb. 9, 2017) ("[The witness] did not die during the pre-indictment delay, and therefore, the Defendant cannot establish the prejudice he sustained was the direct and proximate result of a pre-indictment delay that deprived him of his due process right to a fair trial."), *perm. app. denied* (Tenn. June 7, 2017). In a pretrial motion to dismiss, Defendant stated that his

- 14 -

grandmother died in "the summer of 2015." In a subsequently filed motion, Defendant stated that "everyone who lived in the residence at . . . has died since this indictment was pending[.]" Defendant asserts that the delay prevented his grandparents from "testify[ing] as to whether [Defendant] was in the house in October[,] 2013." However, Defendant acknowledged in his pretrial motion to dismiss that "[o]n October 18, 2013, [the victim] spent the weekend with [Defendant], who is her biological father [, and the victim] was returned to [the victim's mother] on October 20, 2013."

Finally, Defendant has not established that the State caused the delay in order to obtain a tactical advantage. *See Utley*, 956 S.W.2d at 495. In fact, in his brief on appeal, Defendant acknowledges that "the State certainly did not delay bringing the indictment in hopes these witnesses would die before trial[.]" Defendant offers nothing to support his assertion that the State "used the delay to gain a tactical advantage." Accordingly, we conclude that Defendant has not established that the pre-indictment delay violated his right to a fair trial. Defendant is not entitled to relief on this issue.

*Election of offenses*

Defendant challenges the State's election of offenses as inadequate because the State did not establish that the two offenses were not the same incident. The State responds that the election sufficiently identified two distinct acts of sexual abuse.

Tennessee courts have repeatedly held that the State must elect the particular offense for which a conviction is sought and must instruct the jury as to the need for jury unanimity regarding the finding of the particular offense elected. *See, e.g., State v. Brown*, 762 S.W.2d 135, 137 (Tenn. 1988); *State v. Walton*, 958 S.W.2d 724, 727 (Tenn. 1997); *State v. Shelton*, 851 S.W.2d 134, 136 (Tenn. 1993); *Burlison v. State*, 501 S.W.2d 801, 804 (Tenn. 1973). The election requirement arises most often when a defendant is alleged to have performed multiple sexual acts over a lengthy period of time against young children who are unable to provide the exact date on which any one act occurred. *See, e.g., State v. Johnson*, 53 S.W.3d 628, 631 (Tenn. 2001); *Brown*, 992 S.W.2d 389, 391-92 (Tenn. 1999). "Any description that will identify the prosecuted offense for the jury is sufficient. In fulfilling its obligation . . . to ensure that an election occurs, the trial court should bear in mind that the purpose of election is to ensure that each juror is considering the same occurrence." *Shelton*, 851 S.W.2d at 138 (internal citations and footnote omitted). The prosecutor need not identify a specific date but may "identify a particular type of abuse and elect that offense if the victim suffered multiple types of abuse" or may ask the child victim "to describe unique surroundings or circumstances that help to identify an incident." *State v. Knowles*, 470 S.W.3d 416, 424 (Tenn. 2015).

Here, the proof at trial established two separate incidents. During the forensic interview, the victim told Ms. Lewis that Defendant abused her twice. The victim told Ms. Lewis that Defendant "licked [her] private area" with his tongue. During the second incident, Defendant took out his "private area" and put it inside her "private area." During her trial testimony, the victim recalled the oral contact but not the penile penetration. She testified at trial that it happened "maybe two times" during the same weekend. She testified that it happened "[m]ore than once in separate nights."

At the conclusion of the State's case-in-chief, the trial court explained the importance of the State's election of offenses to the jury: "In this case there have been two incidents described by witnesses that the jury could consider as a sexual assault. The jury's verdict must be unanimous. And so when you're deciding count one rape of a child, the State has to elect what instance they want you to consider for that." The State made the following election of offenses, as provided in the trial court's instructions to the jury:

> Count one. In count one the State has elected to submit for your consideration the alleged act of rape of a child, as described by [the victim] as occurring in her great[-]grandmother's house in the brown chair when the defendant put his penis in her vagina as she describe[d] with the dolls in her forensic interview.
>
> . . . .
>
> Count two. In count two the State has elected to submit for your consideration the alleged act of aggravated sexual battery as described by [the victim] as occurring in her great[-]grandmother's house in the brown chair when the defendant allegedly put his mouth on her vagina and licked her vagina during the first time this happened.

Defendant asserts that the State's references to the brown chair were "overly vague and improper" and "failed to sufficiently delineate the offenses for which the State sought prosecution." We disagree. Based upon our review of the record, we conclude the State effectively elected the specific offenses upon which it relied in convicting Defendant. The election specified two separate acts of abuse, one act of penile penetration and one act of oral contact. Additionally, the State's election in count two provided a timeframe as "the first time this happened." Defendant's focus on the State's reference to the brown chair is irrelevant because there was no allegation or proof that any incident occurred in another location. We conclude that the State effectively elected the offenses for which Defendant was convicted. Defendant is not entitled to relief on this issue.

- 16 -

*Sentencing*

Defendant contends that the trial court erred in sentencing him because, Defendant asserts, the trial court considered "non-statutory factors" in determining his sentence. The State responds that the trial court properly sentenced Defendant.

When an accused challenges the length, manner, or range of a sentence, this court will review the trial court's decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012); *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). The party appealing a sentence bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401, Sent'g Comm'n Cmts. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10.

In imposing a sentence, the trial court must also consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement by the defendant in his own behalf; and (8) the result of the validated risk and the needs assessment conducted by the department and contained in the presentence report. T.C.A. § 40-35-210(b). In addition, the principles of sentencing provide that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. *Id*. § 40-35-103(2), (4). To provide meaningful appellate review, the trial court must state on the record its reasons for the sentence chosen. *Id*. § 40-35-210(e).

After doing so, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting T.C.A. § 40-35-210(d)). The trial court shall consider, but is not bound by, the provision that "[t]he minimum sentence within the range of punishment is the sentence that should be imposed . . . [and] should be adjusted, as appropriate by the presence or absence of mitigating and enhancement factors." T.C.A. § 40-35-210(c); *Carter*, 254 S.W.3d at 346. A non-exclusive list of mitigating and enhancement factors are provided in Tennessee Code Annotated sections 40-35-113 and -114. The weighing of both mitigating and

enhancement factors is left to the trial court's sound discretion, but a trial court's misapplication of a mitigating or enhancement factor will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709.

Defendant was convicted of two counts of aggravated sexual battery, a Class B felony, which carries a sentencing range for a standard offender of eight to 12 years. T.C.A. § 39-13-504(b), 40-35-112(a)(2). Thus, Defendant's sentences of 12 years for each conviction were within-range.

In sentencing Defendant, the trial court applied two enhancement factors: 1) that Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the range; and 2) that Defendant abused a position of private trust. *Id.* § 40-35-114(1), (14). There was evidence to support both of these statutory factors. Defendant argues that the trial court's consideration of "non-statutory factors," including his spotty employment history and his mother's drug use was improper. Defendant argues that the trial court used mitigating factors to actually enhance his sentences. Defendant does not specifically state how the record shows this other than a reference to the transcript of the sentencing hearing, at which the trial court stated:

> So, although I find that it is somewhat mitigating that the witness, his mom used drugs and his grandmother, they were both incarcerated for drugs. He's following along in the same – in the same manner with drugs and not working. He's only held three jobs and those were just for a few months only and just abandoned or resigned the jobs for two, or three, or four months at a time. So, I can't really give weight to that enhancement factor.

It appears as if the trial court misspoke when it used the word "enhancement" rather than "mitigating." The record indicates that the trial court considered Defendant's mother's drug use in mitigation of his sentence, but the court gave that factor little weight. Nevertheless, although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* T.C.A. § 40-35-114; *see also Bise*, 380 S.W.3d at 701; *Carter*, 254 S.W.3d at 343. Once the trial court determines the sentencing range, it "is free to select any sentence within the applicable range." T.C.A. § 40-35-210(a),(d); *Carter*, 254 S.W.3d at 343. Our review of the record indicates the trial court imposed a within-range sentence after properly considering the evidence adduced at the sentencing hearing, the presentence report, the principles of sentencing, the parties' arguments, the nature and characteristics of the crime, and evidence of mitigating and enhancement factors. T.C.A. §§ 40-35-103(5), -114, -210(b). Therefore, Defendant's sentence is presumed reasonable.

Defendant also contends that "both the mother and [the victim] stated that they wanted [Defendant] to get out of jail" and that his "lengthy sentence is in direct contravention to the alleged victim's wishes." Defendant does not provide any citation to the record, and no such proof was presented at the sentencing hearing. No victim impact statements were provided at sentencing. At trial, the victim's mother testified that she wanted "this to be over with" and did not care "if [Defendant] gets out," but she testified that the victim "still ain't going to have nothing [sic] to do with him." On cross-examination, in response to defense's counsel's question about whether she wanted her "daddy" to "come home," the victim testified: "Yes. But, like, yeah. Like, but – yeah, just yeah." Moreover, a victim's desired outcome does not override other relevant sentencing considerations. *See State v. Ring*, 56 S.W.3d 577, 584 (Tenn. Crim. App. 2001).

Nothing in the record indicates the trial court abused its discretion in enhancing Defendant's sentences above the statutory minimum. Defendant is not entitled to relief as to this issue.

*Sufficiency of the evidence*

Defendant contends that the evidence was insufficient to support his convictions because the victim's testimony at trial was "uncertain and contradictory." The State responds that it was within the province of the jury to accredit the victim's testimony and that the evidence supports Defendant's convictions. We agree with the State.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is

> there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id*.

Defendant was convicted of aggravated sexual battery, which is unlawful sexual contact of a victim by the defendant where the victim is less than 13 years old. T.C.A. § 39-13-504(a)(4). "Sexual contact" is "the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(2).

In the light most favorable to the State, the evidence at trial established two counts of aggravated sexual battery. The victim testified that when she was six-years-old, Defendant pulled down her shorts and underwear and licked her "private part" with his mouth. During her forensic interview, she stated that Defendant "licked [her] private area" with his tongue. The victim testified at trial that it happened "more than once" during the same weekend. Although the victim testified at trial that she could not

remember what Defendant did during the second incident, she stated in her forensic interview that Defendant took out his "private area" and put it inside her "private area," and the victim used dolls to demonstrate.

Defendant concedes that a victim's testimony alone is sufficient to support a convictions and requires no corroboration. *See State v. Elkins*, 102 S.W.3d, 582-83 (Tenn. 2003) (Evidence was sufficient to support conviction for rape of child, despite the fact that victim's testimony contained some inconsistencies. Furthermore, as we have stated, any inconsistencies in the victim's testimony were resolved by the jury as the trier of fact. We conclude that the evidence is sufficient to support Defendant's convictions. Defendant is not entitled to relief.

*Cumulative error*

Waiting until the "conclusion" part of his brief, Defendant contends that cumulative errors by the trial court constitute reversible error. Defendant mentions errors involving admission and exclusion of evidence and rulings pertaining to not ordering the State to provide a bill of particulars. Our supreme court has stated:

> The United States Constitution protects a criminal defendant's right to a fair trial; it does not guarantee him or her a perfect trial. We have reached the same conclusion with regard to the Constitution of Tennessee. It is the protection of the right to a fair trial that drives the existence of and application of the cumulative error doctrine in the context of criminal proceedings. However, circumstances warranting the application of the cumulative error doctrine to reverse a conviction or sentence remain rare.
>
> The cumulative error doctrine is a judicial recognition that there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial.

*State v. Hester*, 324 S.W.3d 1, 76-77 (Tenn. 2010) (citations omitted).

To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings. *State v. Herron*, 461 S.W.3d 890, 910 (Tenn. 2015) (citing *Hester*, 324 S.W.3d at 77). In our review of this case, we have found two errors: (1) the admission of the narrative portion of a medical record, in which the victim's mother told the medical provider what the victim stated that

Defendant had done to her; and (2) allowing the victim's mother to testify at trial about what the victim told her Defendant had done to her. Because both errors resulted in the admission of the same evidence, however, we conclude that the errors did not affect the reliability of the convictions or deny Defendant a fair trial. Also, in concluding that both errors were harmless, we noted that other evidence of the victim's statements was properly admitted, including the victim's testimony at trial, her statements in the forensic interview, and her own statements to medical providers. We conclude that Defendant is not entitled to relief under the cumulative error doctrine.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE